## Baston, Appellant, *v.* Stoehr & Fister.

Argued December 11, 1942.

Before Baldrige, Stadtfeld, Rhodes, Hirt and Kenworthey, JJ.

*Wm. B. Landis*, with him *Walter W. Kohler*, for appellant.

*J. Paul Erwin*, with him *W. Glenn George*, for appellee.

Opinion by Stadtfeld, J., March 1, 1943.

This is an appeal from the judgment of the court below affirming an order of the Workmen's Compensation Board reversing an award made by the referee and disallowing compensation.

The facts of the case which are not disputed are as follows: On January 25, 1939, and for several years prior thereto, the claimant, John J. Baston, had been employed as a driver's helper by the defendant company. On that date the claimant and three fellow employees were engaged in delivering a coal and gas combination range weighing about 450 pounds to the apartment of one of defendant's customers. In order to deliver the stove four employees of the defendant company undertook to carry it up to the third floor of the purchaser's apartment. The steps leading from the second to the third floor were steep and narrow. The claimant undertook to carry the front end of the stove on the left hand side going up. In carrying the

stove claimant was facing down the stairs and walking backwards up the stairs. At some point between the second and third floor claimant exclaimed that he had hurt himself. After this incident happened, he ceased to assist in carrying the stove and sat down on a chair in the kitchen. There he was given a drink of water by one of the women in the house. He completed that day's work, doing no more heavy work. He did, however, continue to work for the defendant company until February 6, 1939.

Subsequent to January 25, 1939, claimant experienced numbness and tingling in the hands and a pain in the back. A medical examination revealed that claimant suffered a hemorrhage in the spinal cord at the level of the third and fourth dorsal vertebrae due to necrosis of the nerve tissue in that region. Subsequent to January 25, 1939, claimant's condition became progressively worse. After February 6, 1939, the day that claimant ceased working, he was totally disabled.

After hearing held upon claimant's petition for compensation the referee made a finding that "at some point between the second and third floor, while carrying the stove, the stove gave a jerk and the Claimant felt something snap in his back at the base of his spine." The referee concluded that claimant had suffered an "accident" within the meaning of Section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736 (77 PS §411, 431) and made an award of compensation. On appeal to the board that finding of fact by the referee was set aside and in place thereof the board substituted its own finding to the effect that while carrying this stove between the second and third floors claimant merely exclaimed that he hurt himself. The award of the referee was accordingly set aside and the claimant's petition for compensation was disallowed. The court below affirmed the board's order.

The sole question presented in this appeal is whether or not claimant suffered an "accident" within the meaning of the Workmen's Compensation Act.

The basic controversy in this case revolves about the question as to whether or not the stove which claimant was engaged in carrying with the assistance of his fellow employees, did, as a matter of fact, give a jolt or a jerk. The referee found as a fact that it did; the board refused to make such a finding.

"The burden of proof is upon the claimant, and, if the evidence to sustain that burden is not believed by the board, it may decline to grant an award thereon, or if, in the opinion of the board, such evidence is so indefinite and inconsistent that it cannot be accepted as a basis for a finding which would sustain an award, no compensation need be given.": *Seitzinger v. Fort Pitt Brewing Co.*, 294 Pa. 253, 144 A. 79.

The testimony discloses that claimant had been employed for twenty years as a driver's helper and that five or ten ranges, such as the one in this case, were delivered yearly.

With reference to the circumstances attending the alleged accident involved in this case, the claimant testified that while carrying the stove it gave a "jerk or jolt" and that he then felt a snap in his back. It was shown that on May 2, 1939, claimant, while in the hospital, signed a statement admitting that "at no time during the job did I slip or twist myself or did I jerk." He also stated that pain did not come on suddenly. Upon cross-examination he testified that he did not remember that statement and that he was too sick at that time to know what was said. Claimant also testified that following this incident he finished the day out and that was the last day he worked. Claimant had fixed the day of the alleged accident as being February 6, 1939 rather than January 25,

1939, the date fixed by the findings of the compensation authorities.

None of claimant's fellow employees, who were not so far removed from claimant that they could not observe anything of an unusual or irregular nature, corroborated claimant's testimony to the effect that the stove jerked.

Everett Nealon, called as a witness on behalf of the claimant, testified that he, the claimant, McDonald and Krause, all employees of the defendant, delivered the stove in question and that before they got to the top of the stairs, the claimant asked that the stove be let down, as he hurt himself, and that he let a groan out of him at the time; that the stove was then at the top landing and that the claimant went into a room and sat down; that Arthur Green gave them a lift on the stove after Baston went into the room. The witness had signed a statement for the defendant's insurance carrier's adjuster on March 28, 1939, wherein he stated that on that particular delivery there was no accident, slip or twist, and that no one was squeezed. He also said in that statement that the claimant was his steady helper, and when they finished, the claimant said he was not going to do hard work like that any more.

Arthur Green, a plumber under contract with defendant for installation of its merchandise, called on behalf of the defendant, testified that he had no recollection of anything happening to the claimant on that day, and did not remember carrying the stove.

Gerald McDonald, a truck driver for the defendant, called on behalf of the defendant, testified that when they got near the top of the steps, they had to let the stove down, as the claimant said he hurt himself. He did not recall whether Green helped carry the stove or not.

Fred Krause, an employee of defendant, called as a witness on behalf of the defendant, testified that they had placed the stove down for a rest when they were about half way up the third flight of steps, and that the same four men carried the stove to the kitchen. He did not recall whether Green helped carry the stove. He was unable to recall the claimant saying or doing anything unusual at that time.

Mary Hope, an occupant of the house at which the delivery was made, called as a witness on behalf of the claimant, testified that the men were near the top of the stairs when the claimant yelled that he hurt himself. She testified that Green took the claimant's place and carried the stove the rest of the way.

Helen Hope, another occupant of the house, called as a witness for the claimant, testified that they got about half way up the stairs when the claimant said he hurt himself. She testified that Green took the claimant's place, and carried the stove the rest of the way. She stated that as the claimant was lifting the stove over the steps, he seemed to jerk and at that time one of the men told the claimant to get from under the stove.

The medical witnesses called on claimant's behalf testified that the cause of claimant's disability was a hemorrhage in the spinal cord. A medical witness called on behalf of the defendant testified that the cause of claimant's disability was a thrombosis of the anterior spinal artery in the thoracic dorsal region, due to arteriosclerosis, due to vascular changes in the individual.

On the basis of all the testimony the board made findings of fact, relating to the circumstances of the incident of January 25, 1939, adverse to the claimant. In *Walsh v. Penn. Anth. Mining Co.*, 147 Pa. Superior Ct. 328 at page 333: "Where the decision of the board

is against the party having the burden of proof—in this case, the claimant—bearing in mind that a trier of fact is not *required* to accept even uncontradicted testimony as true *(District of Columbia's Appeal, 343 Pa. 65, 79, 21 A. 2d 883, 890)* the question before the court is whether the board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence. Unless the answer is in the negative, the order must be affirmed."

It is well established that an accident cannot be inferred merely from an injury; there must be some evidence of the accident, either direct or circumstantial, in the latter instance clearly and logically indicated: *Adamchick v. Wyoming Collieries Co.,* 332 Pa. 401, 3 A. 2d 377; *Crispin v. Leedom & Worrall Co.,* 341 Pa. 325, 19 A. 2d 400; *Toohey v. Carnegie Coal Corp.,* 150 Pa. Superior Ct. 297, 28 A. 2d 362. We are of the opinion that the board's finding of fact, based upon sufficient, competent evidence and not involving a capricious disregard of the testimony, would not support the conclusion that claimant sustained an "accident" within the meaning of the Workmen's Compensation Act.

The order of the court below is affirmed.