## Yuhas *v.* Bethlehem Steel Corporation.

Argued March 7, 1973, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Robert G. Rose,* with him *Spence, Custer, Saylor,
Wolfe & Rose,* for appellant.

*Robert S. Glass,* with him *Glass, Glass & Moot,* for
appellee.

OPINION BY JUDGE KRAMER, April 5, 1973:

This is an appeal by Bethlehem Steel Corporation
(Bethlehem) from an order of the Court of Common
Pleas of Cambria County sustaining the appeal of John
Yuhas (Yuhas) and directing a Workmen's Compen-
sation award to him.

Yuhas, a forty-five year old steelworker for Bethle-
hem, filed a claim petition for Workmen's Compensa-
tion benefits arising out of his alleged physical injuries
resulting from an incident which occurred on March
20, 1968 at Bethlehem's Johnstown plant. Yuhas was

an assistant burner in a "cable hole" [also called "cobble hole" in record] at the plant, where he burned scrap and bundled it. On the date of the incident, in the routine performance of his work, he was attempting to attach a chain around a bundle of scrap for the removal of the bundle by a crane. A large piece[1] of steel became lodged under the bundle in such a way that Yuhas knelt down and attempted to dislodge it. A description of what took place is best described by Yuhas, himself, in his testimony before the referee, where he said: "So as I got down to move this piece that was stuck, and all of a sudden as I went to start lifting, pain shot to my back and I doubled over. The pain shot down through my back through to my legs. I couldn't move—the pain was continuous."

On the next day, he was sent to the hospital by his personal physician, who, after examination, originally diagnosed the cause of the pain as that of a back sprain. When the pain did not subside after treatment, Yuhas was referred by his personal physician to Dr. Casale, an orthopedic surgeon. Dr. Casale diagnosed Yuhas' problem as "spondylolysis of the lumbar spine." Dr. Casale defined this as follows: "Spondylolysis is a condition characterized by the failure of union, or portions of the posterior element of a vertebral segment. Such conditions are felt to be conducive to an underlying instability in the spine, thus effecting its function. Many of these cases remain asymptomatic until brought to light by some heavy exertion, accident or trauma." Dr. Casale also noted that Yuhas had "a congenital lesion in the lumbar region." Later, Yuhas' personal physician, Dr. Zobel, agreed with Dr. Casale's diagnosis. As a result of Dr. Casale's diagnosis, Yuhas

---

[1] At one place in the record, the weight of the piece of steel was said to be "fifty" pounds, in another "one hundred sixty" pounds.

underwent two surgical operations wherein two spinal fusions were performed to correct his back condition. After hearing, the referee concluded that Yuhas had "suffered no accident" and that although his condition "could possibly come under that of an unusual pathological result this, however, is precluded by the fact that the claimant had a preexisting spondylolysis." In reaching this conclusion, the referee had found that the moving of the piece of steel under the bundle, described hereinbefore, would have "required a good deal of exertion to release it." He also found that "spondylolysis which is basically a displacement of the vertebrae due to degenerative joint disease" had been diagnosed as Yuhas' condition. Furthermore, he found that "Dr. Casale's report stated that the condition of John Yuhas was asymptomatic and he could not say that it was a natural evolution of the degenerative joint disease or that it was brought on by heavy exertion, accident or trauma." On appeal from the referee's adjudication, the Workmen's Compensation Board (Board) affirmed the referee.

The case was then appealed to the court below, and it sustained the appeal of Yuhas. The lower court held that the referee and the Board erred in holding that Yuhas' spondylolysis, which had been asymptomatic before the incident, was a bar to a recovery of compensation under the unusual pathological result doctrine. The court pointed to the record wherein Yuhas stated he had "never had pain and no back trouble ever" and the finding by the referee that the removal of the steel bar would have "required a good deal of exertion to release it." These items, together with Dr. Casale's statement that spondylolysis may remain asymptomatic "until brought to light by some heavy exertion, accident, or trauma," and the court's reliance upon *Gasparovich v. Federal Reserve Bank of Cleveland,* 194 Pa. Superior Ct. 137, 166 A. 2d 57 (1961), were the

bases of the court's conclusion that the Board had erred as a matter of law. Although it may be difficult to find fault with the logic of the court below, the present status of the law in this Commonwealth does not permit us to affirm its order.

As sympathetic as we may be to the sufferings of workmen, such as Yuhas, we, as well as the court below, are bound by the established principles of law governing these cases. The essential issue is whether or not a compensable "accident" occurred. "Disability overtaking an employe at work is not compensable unless it is the result of an accident. . . . While the Workmen's Compensation Act should be liberally construed, its purpose is to compensate for accidental injuries and not to insure the life and health of an employe. . . ." *Rettew v. Graybill,* 193 Pa. Superior Ct. 564, 567-68, 165 A. 2d 424, 425-26 (1960). The burden of proving that an accident has occurred, moreover, is on the plaintiff. *Hurlburt v. Fidelity Window Cleaning Company,* 192 Pa. Superior Ct. 152, 160 A. 2d 251 (1960). An accident is any unforeseen untoward happening which was not to be reasonably anticipated. *Litman v. Litman,* 185 Pa. Superior Ct. 69, 137 A. 2d 918 (1958); *Lacey v. Washburn & Williams Company,* 309 Pa. 574, 164 A. 724 (1933). Recently, this Court in the case of *Hinkle v. H. J. Heinz Company,* 7 Pa. Commonwealth Ct. 216, 298 A. 2d 632 (1972), stated that one of the categories of accidents for which compensation may be granted is "an unusual pathological result of an ordinary condition of work."

In the case of *Collins v. U. S. Steel Corporation,* 7 Pa. Commonwealth Ct. 333, 298 A. 2d 637 (1972), we stated: "To prove an accident . . . requires a showing of more than a feeling of pain. There must be a specific occurrence causally related to the onset of the pain. '[P]roof merely of the sudden onset of pain while an employe is engaged in his usual work in the usual man-

ner is no evidence of an accident even where there is no evidence of a pre-existing condition; the basis of the holding is that the occurrence of the pain may not have been coincidental with the development of the injury which caused the pain and does not alone, therefore, furnish proof that an injury by accident *occurred* at the time the pain was felt.' " (Emphasis in original.) 7 Pa. Commonwealth Ct. at 337, 298 A. 2d at 639. We recognized in *Collins* that the most recent decisions on the unusual pathological result doctrine indicate that a more liberal construction be afforded to the definition of an "accident". The intended distinction between those accidents that are compensable and those that are not compensable are divided by a line which at times appears indistinct. *See York v. State Workmen's Ins. Fund,* 131 Pa. Superior Ct. 496, 498, 200 A. 230, 231 (1938). *Gasparovich v. Federal Reserve Bank of Cleveland, supra,* upon which the lower court relies, is distinguishable. It first must be noted that in that case the appellate court was presented with an appeal by the employer after claimant had received a favorable ruling from the referee and the Board. Under that situation, the evidence is reviewed in the light most favorable to the employe. *See Sabatini v. Affiliated Food Distributors, Inc.,* 6 Pa. Commonwealth Ct. 470, 295 A. 2d 845 (1972); *Nash v. Sandnes' Sons, Inc.,* 6 Pa. Commonwealth Ct. 403, 295 A. 2d 615 (1972); *Bambrick v. Asten Hill Manufacturing Company,* 5 Pa. Commonwealth Ct. 664, 291 A. 2d 354 (1972). In this case, the findings and conclusions of the referee and the Board were adverse to the employe, and therefore, the lower court had a duty merely to determine whether or not the findings were consistent with each other and the conclusions of law and whether or not there was capricious disregard of competent evidence. *See Bullock v. Building Maintenance, Inc.,* 6 Pa. Commonwealth Ct. 539, 297 A. 2d 520 (1972); *Billet v. Keystone Roof-*

*ing Manufacturing Company,* 6 Pa. Commonwealth 23, 291 A. 2d 921 (1972) ; *Pellegrino v. Baldwin-Lima-Hamilton Corporation,* 5 Pa. Commonwealth Ct. 150, 289 A. 2d 531 (1972). Perhaps more importantly in *Gasparovich,* the Board and the court found, as a fact, that there was no causal relationship between the employe's preexisting condition and the injury which he suffered. In this case, the Board and the referee concluded that Yuhas' condition was due to spondylolysis, which was a displacement of the vertebrae due to a degenerative joint disease. If the claimant's preexisting physical weakness or disease is causally connected to the injury suffered while in the course of the employe's normal duties, then even if his work experience accelerates the pathology to a painful and disabling consequence, there still can be no recovery because the doctrine does not apply. *See Rettew v. Graybill, supra; Gammaitoni v. Gasparini Excavating Company,* 185 Pa. Superior Ct. 643, 139 A. 2d 675 (1958) ; *Landis v. General Motors Corporation,* 180 Pa. Superior Ct. 332, 119 A. 2d 645 (1956). When the performance of one's usual duties aggravates a preexisting back ailment or *disease,* there can be no recovery under the doctrine. *See Rupchak v. Westinghouse Electric & Manufacturing Company,* 161 Pa. Superior Ct. 228, 54 A. 2d 309 (1947) ; *A. P. Green Refractories Company v. Luckey,* 644 C.D. 1972, 8 Pa. Commonwealth Ct. 172, 301 A. 2d 914 (1973). Our ruling herein is still consistent with *Gasparovich, supra.* We do not say that an employe must be a perfect physical specimen. A preexisting condition will not bar a finding of an accident if the condition is not causally related to the injury claimed. In other words, in *Gasparovich* the prior operation and continued good health thereafter permitted the Board to presume that the back was in good condition at the time of the injury and that the incident in the normal course of employment was the cause of the injury claimed.

The court below, absent a finding of capricious disregard, was duty bound to accept the findings of the referee and the Board. Those findings were based upon the record and properly supported the conclusion that there was no compensable accident in this case, and therefore, the order of the court below is hereby reversed.